## THE CITY OF BROOKLYN *vs.* THE BROOKLYN CITY RAILROAD COMPANY.

The condition of a bond executed by a railroad company, to a city corporation. in consideration of the privilege of laying its tracks upon certain specified streets, was that the company should keep the pavement of such streets in thorough repair within the tracks, and three feet on each side thereof, &c.. "under the direction of such competent authority as the common council may designate." In an action for a breach of such bond,

*Held*, 1. That it was immaterial whether or not the clause providing for a desig nation of competent authority was a condition precedent to the obligors' keeping the streets in repair. That it was a condition that could be waived; and if the acts of both parties were such that a waiver would have been in- ferred, as a matter of law, prior to the alleged breach, it was not competent for the obligors, in an action for the breach, to set up the clause as a defense.

2. That the defendants had waived the clause requiring a designation, by en- tering upon, using and repairing the streets from the date of the bond to the day of trial; and that the plaintiff had waived it by permitting the defend- ants so to enter upon, use and repair the streets without making any desig- nation.

3. That in such action the proper measure of damages was, the amount of a judgment recovered against the plaintiff, by an individual, for personal inju- ries sustained by him in consequence of the neglect of the obligors to keep a street in repair, and which judgment the city had been compelled to pay.

4. That the city corporation having notified the company to defend the suit brought against the city, and the company having failed to do so, the ex- penses of defending such suit were also a proper item in the recovery upon the bond.

APPEAL by the plaintiff from a judgment ordered at the trial, dismissing the complaint.

The defendants, in order to obtain permission from the plaintiff to lay railroad tracks upon certain streets of the city of Brooklyn, and as a part of the consideration for such privilege, executed a bond, to the city, containing this condition: "The pavement [of such streets] to be kept in thorough repair by the said company, within the tracks, and three feet on each side thereof, with the best water stone, under the direction of such competent author- ity as the common council may designate." Upon the

City of Brooklyn *v.* Brooklyn City Railroad Company.

execution of this bond, permission was given, by the plaintiff, to the defendants, to lay their tracks upon the streets specified, and they were laid accordingly, and the streets used by the defendants for the purposes of their road. This action was brought to recover damages for an alleged breach of the bond, by the defendants, in neglecting to keep one of the streets in repair, in consequence of which one Ferdinand Meier sustained personal injuries for which he recovered a judgment against the city corporation, which the city was compelled to pay. The amount of such judgment was claimed, in the complaint, as the measure of damages for the breach.

On the trial, the plaintiff was nonsuited, on the ground that there was no evidence that the common council of the city had designated a " competent authority " to superintend the keeping of the pavement in repair; and that such designation was a prerequisite to the performance of the covenant by the defendants.

*Wm. C. Dewitt,* for the appellant.

*G. T. Jenks,* for the respondents.

*By the Court,* PRATT, J. This is an action for an alleged breach of a bond given by the defendants to the plaintiff. The condition of the bond is as follows: " The pavement to be kept in thorough repair by the said company, within the tracks, and three feet on each side thereof, with the best water stone, under the direction of such competent authority as the common council may designate."

The breach was the alleged failure of the company to keep the pavement in repair as provided, whereby one Ferdinand Meier was injured, to the damage of the plaintiff in the amount of a certain judgment recovered by Meier against it, in a suit which the company had been notified to defend.

City of Brooklyn *v.* Brooklyn City Railroad Company.

The complaint claimed the amount paid by the city, on said judgment, as the measure of damages. The point that no damage was shown was not taken at the trial, and should not be considered here. Had the point been taken when the plaintiff rested, a motion might have been made to put in more evidence; but there was evidence in the case that the defendants had not kept the street in repair as agreed; and the plaintiff, if there had been a breach, was at least entitled to nominal damages.

The point upon which the case was decided, at the trial, was that no breach had been proved, as the plaintiff did not prove, as matter of fact, any designation of competent authority under whose direction the pavement was to be kept in repair. The legal question is, whether this clause is a condition precedent to the obligation of the defendants to make any repairs?

It cannot be denied that the agreement was a sufficient authority for the defendants to enter upon and use the streets for the purposes of their charter, without being liable to the city as trespassers. They did so enter upon and use the streets, and exhibited no fear of liability for their acts, until it became a convenient excuse for their failure to perform the consideration for which their license so to use the streets was granted.

In our view it is immaterial whether or not the clause providing for a designation of competent authority was a condition precedent to the defendants' keeping the streets in repair. It was a condition that could be waived; and if the acts of both parties were such that a waiver should have been inferred as matter of law, prior to the alleged breach, it was not competent for the defendants in this suit to set up the clause as a defense. The bond would become changed by tacit agreement, acted upon by both parties, and neither party could return to and exact the original terms, without reasonable notice of its intention so to do.

I think it is clear that the defendants waived the clause requiring a designation, by entering upon, using and repairing the streets, from the date of the bond to the day of trial. The plaintiff waived it by permitting the defendants so to enter upon, use and repair the streets without making any designation; and thus both parties acquiesced for several years and until the commencement of this suit. The defendants, by accepting the benefits of the agreement, and going upon the streets and repairing them, gave the plaintiff to understand that they did not require any authority to be designated under whose direction they should do the work; and they are now estopped from setting up, in defense of this suit, laches on the part of the plaintiff, which were induced by their own conduct.

It is a fair construction of the contract between the parties, that the clause, "under whose direction" &c. * * * was a right secured to the plaintiff, which it could avail itself of or not, at its option, irrespective of any claim the defendants might make in that behalf. The city was at liberty to waive the right to designate any competent authority, without any consent on the part of the defendants. It was an additional burden imposed on the defendants. They were not only to keep said streets in repair, but were to do so under the direction of any competent authority designated by the plaintiff. The waiving of this right, on the part of the plaintiff, being in favor of the defendants, they must be presumed to have accepted such waiver, and acceded thereto for several years, and until the date of the complaint.

The case of *Coombe* v. *Greene,* (11 *Mees. & Welsby,* 480,) cited by the defendants, is not analogous to the case at bar. In that case the defendant agreed to expend one hundred pounds upon improvements in a house, under the direction of a surveyor to be appointed by the plaintiff. The defendant could not know where or how to expend the money until the surveyor was appointed. The

work was not described, and the court held, construing the contract to give effect to the intent of the parties, that the appointment of a surveyor was a condition precedent; but here the work was described; the time when, and the manner how, it was to be done, was stipulated in the contract. The defendants were to keep the streets in repair at all times, within the tracks and three feet on each side thereof, with the best water stone. The defendants not only knew exactly what they were to do, under the contract, but how and when they were to do it.

The substance of the contract, on the part of the defendants, was *to keep* the pavement, at all times, in repair, and not to do work on the pavement when directed by city authorities. This obligation became operative, at all times and under all circumstances, whenever the pavement got out of repair, and the qualification that the work of repairing was to be done under the plaintiff's authority related only to the manner of doing the work, and could not affect the time of doing it, in the absence of a positive restriction not to do it at a particular time.

The contract must be construed so as to carry out the intention of the parties. In order to do this, the court can take into consideration all the surrounding circumstances. A contract will not be so construed as to nullify it, if it can be sustained by any reasonable construction. To judge correctly as to the intention of the parties to this contract, it must be remembered that by it the city conveyed to the defendants a right of great value, and that the only material benefit the city was to receive therefor was the repair of the streets by the defendants. It cannot be presumed that the city intended to grant the right for nothing, nor that the defendants expected to receive it without some equivalent. But as there was a superintendent of streets appointed by law, and as the common council has no power to designate a person as anticipated by the contract, the construction contended

for by the defendants would relieve them from all liability. This cannot have been the intention of the parties, and the court must seek for some construction that will not do violence to reason. The court must give effect to the contract, as far as possible.

There is no reason why the defendants should not be held responsible for their neglect to make repairs. The measure of damages is that contended for by the plaintiff. The general rule is that the party injured by the breach of a contract can recover all the damage he can prove himself to have sustained. This is qualified, in cases arising on contract, by an exception to the rule, to the effect that the damage must be such as might naturally have been expected to follow the breach. (*Griffin* v. *Colver*, 16 *N. Y. Rep.* 489.)

In this case, the natural and ordinary consequences of a breach of the defendants' contract to repair was the injury to Meier and the recovery of damages therefor. Recovery and payment of such judgments as that recovered against the city might naturally have been expected to follow the breach of the defendants' contract. The city should recover the amount paid by them upon the judgment. As they notified the railroad company to defend the suit brought against the city, and the company failed to do so, the expenses of defending the suit are also a proper item in the recovery here. It might be otherwise, were it not that a judgment of the court was necessary to fix the amount of liability, before the city could safely pay.

Nor can it be claimed that these damages are too remote. The defendants' negligence caused the injury, and the injury occasioned the judgment. The question is not what was the *immediate* cause of the loss complained of, but what was the efficient, procuring, predominating cause, upon a comparison of all the facts? The law, though it does not seek for the cause of causes, is sedu-

City of Brooklyn *v.* Brooklyn City Railroad Company

lous to find the *true* cause, and distinguish that from its incidents and consequences. A familiar illustration is afforded by cases of insurance against fire. The property may be destroyed by the direct means of water used to extinguish the fire, or injured by removal, or stolen by reason of the exposure caused by the fire. Yet the fire is the efficient cause, and the insurer must bear the loss. In *Siordet* v. *Hall,* (4 *Bing.* 607,) the immediate cause of the injury was escape of steam from a boiler; a prior cause was the cracking of the boiler, still again caused by frost. But the court went back of these intervening causes, to the *efficient* cause—the captain's negligence in improperly filling the boiler with water.

In the case at bar, the loss sustained by the city is less remote from the procuring cause than in the cases cited. The city was not bound, as against the defendants, to keep the streets in repair. On the other hand, the defendants owed that duty to the city, and cannot complain of the city for not doing what they had stipulated to do themselves. As against the defendants, the city had a right to presume the street was in repair, and to act accordingly. It is true the city owed a safe road to travelers, but they had contracted this duty out to the defendants, and the defendants were bound to indemnify the city against any loss which was the direct result of their failure to perform their contract. The natural result of their failure was that such injuries would follow, and such damages be recovered. That was the liability which, as between the parties, was assumed by the defendants.

New trial granted.

[KINGS GENERAL TERM, February 14, 1870. *J. F. Barnard, Gilbert* and *Pratt,* Justices.]