Jeff **PERRY** and Scott Cole, on behalf of themselves and all others similarly situated, Plaintiff,

v.

**DUOYUAN PRINTING, INC.**, Wenhua Guo, Xiqing Diao, William D. Suh, Christopher P. Holbert, Lianjun Cai, Punan Xie, Piper Jaffray & Co., Roth Capital Partners, LLC, and Frazer, LLP, Defendants.

10 Civ. 7235 (GBD)

United States District Court, S.D. New York.

Signed February 3, 2017

Jeremy Alan Lieberman, Marc Ian Gross, Tamar Aliza Weinrib, Robert James Hodgson, Pomerantz Haudek Block Grossman & Gross LLP, Jonathan Stern, Laurence Matthew Rosen, Phillip C. Kim, The Rosen Law Firm, P.A., New York, NY, Lionel Z. Glancy, Glancy & Binkow Goldberg LLP, Los Angeles, CA, Patrick Vincent Dahlstrom, Pomerantz LLP, Chicago, IL, Timothy William Brown, The Brown Law Firm, Oyster Bay Cove, NY, for Plaintiff.

Alfred Robert Pietrzak, Thomas Andrew Paskowitz, Joel M. Mitnick, Sidley Austin LLP, Joseph De Simone, James Ancone, Joseph De Simone, Mayer Brown LLP, Terri Ann Mazur, Kaye Scholer LLP, Lawrence Allen Steckman, Robert Howard Rickner, Ted Gary Semaya, Eaton & Van Winkle LLP, New York, NY, Harry Arthur Woods, Jr., Tara A. Laclair, Bruce W. Day, Crowe & Dunlevy, P.C., Oklahoma City, OK, Mary Hirth Tolbert, Crowe & Crowe Attorneys at Law, Nyack, NY, Susan E. Huntsman, Susan Elizabeth Huntsman, Crowe & Dunlevy, P.C., Tulsa, OK, Thomas J. Mullaney, Leventhal, Sliney & Mullaney, LLP, Roslyn, NY, Terri L. Combs, Faegre & Benson, LLP, Des Moines, IA, Michael Krauss, Faegre Baker Daniels LLP, Minneapolis, MN, for Defendants.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, United States District Judge:

Plaintiffs initially brought this putative class action on behalf of themselves and all other similarly situated against Defendants Duoyouan Printing, Inc. ("DYP") and its officers and directors, Wenhua Guo, Xiqing Diao, William D. Suh, Christopher P. Holbert, Lianjun Cai, Punan Xie, (together, "the DYP Defendants"); Piper Jaffray & Co. and Roth Capital Partners, LLC, (together, "the Underwriter Defendants"): and DY's auditor, Frazer, LLP for alleged violations of federal securities laws in connection with DYP's public offering, including 15 U.S.C. §§ 77k, 77l, 77o, 78j(b), 78t and Rule 10b–5. (Consolidated Compl., ECF No. 64, ¶¶ 149–202.) Plaintiffs sought, *inter alia*, class certification, payment of all damages, pre– and post-judgment interest, attorneys' fees, expert

fees, and expenses, as well as any other "just and proper" relief. (*Id.*, at 52.)

The Underwriter Defendants also brought cross-claims against the DYP Defendants, including a cross-claim for contractual indemnity specifically against DYP and Guo, seeking an award of legal fees and expenses and declaratory relief that DYP and Guo are contractually obligated to indemnify the Underwriters. (*See* Underwriters' Ans. and Crossclaims, ECF No. 141, ¶¶ 29–44; Prayer, ¶¶ A–C.) The DYP Defendants moved to dismiss the cross-complaint. (DYP Cross–Defs.' Mot. to Dismiss Cross–Compl., ECF No. 165; Mem. in Supp. of Mot. to Dismiss Cross–Compl. ("Mem."), ECF No 166.) The Underwriters voluntarily dismissed their second, third, fifth cross-claims against Defendants Suh and Holbert. (*See* Nov. 14, 2013 Joint Stipulation, ECF No. 176.) The Underwriters later voluntarily dismissed all of their remaining cross-claims (two through eight), save for the contractual indemnity claim against Cross–Claim Defendants DYP and Guo, as the Underwriters have incurred legal costs of over $1.8 million from this litigation. (Sept. 3, 2015 Joint Stipulation, ECF No. 223, at 3.)

Before this Court is DYP and Guo's Motion to Dismiss the Underwriters' the remaining cross-claim. (*See* Mem., at 9–17.)[1] Cross–Defendants' motion to dismiss the Underwriter Cross–Claimant's contractual indemnity claim for failure to state a claim is GRANTED.

## I. BACKGROUND AND FACTUAL ALLEGATIONS

Cross–Claimants Piper Jaffray and Roth Capital Partners are both investment firms who acted as underwriters in connection with the IPO of DYP. (Cross–Compl. ¶ 23.) The underwriting services they provided to DYP were the subject of the underlying litigation, in so far as Plaintiffs brought claims against the Underwriters alleging purported misconduct and collusion between the DYP Defendants, Underwriters, and Auditor. (Cross–Compl. ¶¶ 15, 23.) The Underwriters allege that they reasonably relied upon the DYP Defendants' representations that all statements of material fact in the Registration Statement and Prospectus were true and correct, as were the audits of DYP. (*Id.* ¶ 28.) The Underwriters further allege that they "reasonably relied upon [DYP Defendants] to alert them to the existence of any 'red flags' or warning signs of misstatements or omissions in DYP's SEC filings." (*Id.*)

After at least three years of litigation, on August 1, 2013, this Court preliminarily approved the proposed settlement agreement between the proposed settlement class represented by Jeff Perry and the DYP Defendants. (Aug. 1, 2013 Order, ECF No. 128.) After a fairness hearing, this Court entered an Order certifying the class for settlement purposes, appointing Lead Plaintiffs and Counsel, and approving the Settlement Stipulation as fair, reasonable, and adequate, (*see* Nov. 23, 2013 Order, at 3–4), as well as an Order and Final Judgment in favor of Plaintiffs Perry and Cole against the Settling Defendants, which at the time did not include the Underwriters. (Nov. 27, 2013 Order and Final Judgment, ECF No. 186.)

As to the Underwriters, this Court denied their motion to dismiss Plaintiffs' Consolidated Complaint and granted the Auditor's motion to dismiss. (*See* Aug. 22, 2013 Order, ECF No. 135, at 24.) The

---

1. The motion was fully submitted following the filing of Cross–Claimant's Opposition brief ("Opp'n," ECF No. 187) and Cross–Defendant's Reply brief ("Reply," ECF No. 188). This Court ordered supplemental briefing, which the parties provided following oral argument. (*See* ECF Nos. 234–237.)

Underwriters filed a notice of appeal from the November 27, 2013 Order and Final Judgment approving the Settlement Agreement, (ECF No. 189), but later stipulated to voluntarily withdraw the appeal without prejudice. (ECF No. 202.) Subsequently, this Court preliminarily approved a settlement between Plaintiffs and the Underwriter Defendants. (February 11, 2015 Order, ECF No. 208.) Plaintiffs' unopposed motion for final approval of the class action settlement involving the Underwriter Defendants and an award of attorney's fees and costs was granted on June 16, 2015. (ECF Nos. 218–219.)

Cross-claimant Underwriters allege that the Underwriting Agreement contractually obligates Cross–Defendants to reimburse them for the Underwriters' legal fees incurred in defending this litigation. (Cross–Compl. ¶¶ 15, 30, 33.) Cross-claimants rely on Paragraph 6(a) of the Underwriting Agreement executed by the DYP Defendants and Underwriters:

> The Company and Mr. Wenhua Guo (the "Controlling Person"), jointly and severally, **agree to indemnify and hold harmless each Underwriter,** ... against any losses [arising out of claims alleging untrue statements of material fact in the registration statement] ... and **will reimburse each Underwriter for any legal or other expenses reasonably incurred by it in connection with investigating or defending against any such loss, claim, damage, liability or action;** provided, however, that neither the Company nor the Controlling Person shall be liable in any such case to the extent that any such loss, claim, damage, liability or action arises out of or is based upon an untrue statement or alleged untrue statement or omission or alleged omission made in the Registration Statement, any Preliminary Prospectus, the Time of Sale Disclosure Package, the Prospectus, or any

such amendment or supplement, any Issuer Free Writing Prospectus or in any Marketing Material, in reliance upon and in conformity with written information furnished to the Company by you, or any Underwriter through you, specifically for use in the preparation thereof.

(Underwriting Agreement ("Agreement"), Ex. 3 to Decl. of Harry A. Woods, Jr. ("Woods Decl."), ECF No. 167–3, at 30–31 (emphasis added).) As to the timing of any such reimbursements,

> [t]he Company and the Controlling Person, jointly and severally, agree that, as an interim measure during the pendency of any claim, action, investigation, inquiry or other proceeding arising out of or based upon any statement or omission, or any alleged statement or omission, described in this Section 6(a), **they will reimburse each Underwriter on a monthly basis for all reasonable legal fees or other expenses incurred in connection with investigating or defending any such claim, action, ... or** other proceeding....

(*Id.* at 31 (emphasis added).)

The Underwriters allege that Plaintiffs' Section 11 and 12(a)(2) securities claims against them "arising out of and based upon alleged untrue statements and omissions in the Registration Statement and Prospectus" were baseless and lacked any merit because the Underwriters fully performed under the Agreement and had no reason to believe the DYP Defendants' Registration Statement and Prospectus, or any other marketing materials contained allegedly false statements or omissions. (*Id.* ¶¶ 34–36, 38.) At the time they filed their Cross–Complaint, the Underwriters alleged that they had incurred no less than $565,000 in legal fees and expenses defending against these claims, (*id.* ¶¶ 39–40), and now claim up to $1.8 million as of the

date they dismissed the majority of their cross-claims. (*See* ECF No. 235, at 1.) According to Cross–Claimants, DYP and Guo have refused to reimburse Cross–Claimants on a monthly basis despite repeated notice of Cross–Defendants' contractual obligation. (*Id.* ¶ 41.)

## II. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires pleading facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Thus, the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

A district court must first review the plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. The court then considers whether Plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.* In deciding the 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013).

## III. CLAIM FOR CONTRACTUAL INDEMNIFICATION

The DYP Defendants do not dispute that the agreement is indeed a contract to which they agreed and are bound. (*See* Opp'n, at 7 (citing Mem., at 9–14).) Indeed, the November 27, 2013 Partial Settlement specifically preserves Cross–Claimants' "contractual right for advancement and reimbursement for costs and fees incurred in defending the Litigation." (*See* ECF No. 186, at 4–5.) However, the DYP Defendants and Guo ("Cross–Defendants") ask this Court to dismiss the Underwriters' cross-claim for contractual indemnification because of public policy concerns that would arise were this Court to enforce the indemnification provision. Specifically, Cross–Defendants contend that forcing them to pay the Underwriters' legal costs would not sufficiently compel underwriters' regulatory compliance, and would ultimately pass on expenses to stockholders, thereby undermining the purpose of federal securities laws—to compensate defrauded investors. *See Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288–89 (2d Cir. 1969).

In *Globus*, a jury found the underwriter defendant liable for federal securities law violations because he had "actual knowledge of the misstatement." *Id.* at 1288. Having "committed a sin graver than ordinary negligence," the Second Circuit reasoned that "to tolerate indemnity under these circumstances . . . would encourage flouting the policy of . . . the Securities Act" by other underwriters. *Id.* (emphasis added). *Globus* has also been extended in this District "to prohibit indemnification of a party who settles securities law claims without admitting fault, unless that party actually demonstrates that it is without fault." *Credit Suisse First Boston, LLC v. Intershop Comm'ns AG*, 407 F.Supp.2d 541, 547 (S.D.N.Y. 2006) (citing *Greenwald*

*v. Am. Medcare Corp.*, 666 F.Supp. 489, 493 (S.D.N.Y. 1987) (allowing a cross-claim for indemnification to continue where director settled, but only if he proved he was without fault and therefore so entitled)).

Cross–Claimants maintain that *Globus'* holding is limited to circumstances where an underwriter is adjudicated as guilty of wrongful conduct. (*See* Underwriters' Suppl. Br., ECF No. 235, at 2.) As they entered into a Settlement Agreement with Plaintiffs, (*see* ECF No. 219), Cross–Claimants were certainly not adjudicated to have "engaged in reckless, willful or criminal conduct," *Credit Suisse*, 407 F.Supp.2d at 547, or even negligent behavior, *see Donaldson Lufkin & Jenrette Sec. Corp. v. Star Techs., Inc.*, 148 Misc.2d 880, 883, 561 N.Y.S.2d 371 (N.Y. Sup. Ct. 1990), *on reargument*, 150 Misc.2d 126, 567 N.Y.S.2d 1002 (N.Y. Sup. Ct. 1991) ("*Donaldson II*"), and *aff'd*, 180 A.D.2d 495, 580 N.Y.S.2d 657 (1992). But, neither have the Underwriters been adjudicated as free of liability, so as to entitle them to enforce an indemnification provision. *See Donaldson*, 148 Misc.2d at 883, 561 N.Y.S.2d 371. Cross–Claimants would have this Court hold that settling underwriter defendants in securities fraud actions fall somewhere in between. That is, because there has been no admission or proof of fault, settling underwriters seeking contractual indemnity are not automatically precluded under *Globus*, and must be given an opportunity to prove they are not liable. (*See* Underwriters Supp. Br., at 2.)

Cross–Claimants have cited to no binding authority that supports such a rule. Cross-claimants rely on *Donaldson* and *Greenwald v. American Medcare Corp.*, 666 F.Supp. 489 (S.D.N.Y. 1987), for the proposition that a settling party should be afforded "an opportunity to prove that he was without fault and is therefore entitled to indemnity." *See id.* at 493 (citing *Gold-*

*stein v. Alodex Corp.*, 409 F.Supp. 1201, 1205–06 (E.D. Pa. 1976); *Koch Indus., Inc. v. Vosko*, 494 F.2d 713, 725 (10th Cir. 1974); *Gould v. Am.–Hawaiian S.S. Co.*, 387 F.Supp. 163, 166–67 (D. Del. 1974), *vacated on other grounds*, 535 F.2d 761 (3d Cir. 1976)). Accordingly, the *Greenwald* court held that, although the director defendant had settled, he was free to pursue adjudication of the merits of his claim. *See* 666 F. Supp. at 493–94.

However, the cases from which the *Greenwald* court derived its rule are inapposite, differing significantly from the instant case in their determinative facts and procedural postures. For example, in those cases, the parties seeking indemnification (none of whom were underwriters), sought indemnification against co-defendants who either admitted the seekers were not at fault, *see Goldstein*, 409 F.Supp. at 1205–06, or were adjudicated as more at fault, *see Gould*, 387 F.Supp. at 166–67. In the third case the *Greenwald* court cited, *Koch Industries*, the public policy concerns the Second Circuit reasoned were determinative in *Globus*, were not at issue because the indemnity-seekers had been successful in their defense at trial. *See Koch Industries*, 494 F.2d at 725.

Cross–Claimants have produced no evidence in relation to this motion to demonstrate they were without fault. It is unclear how Cross–Claimants could prove they did not violate the securities laws, as they are unlikely to get a declaration from the DYP Defendants that Cross-claimants were not at fault or that DYP was more at fault than Cross-claimants. (*See* DYP Supp. Br., ECF No. 236 at 1.) Additionally, the denial of Cross–Claimants' motion to dismiss the underlying securities fraud claims weighs against a finding that they successfully demonstrated their lack of fault. *See Credit Suisse*, 407 F.Supp.2d at 550.

 

Although the contract for indemnification for which the parties bargained is a valid contract, in the unique context of federal securities law, underwriters are part of an important regulatory mechanism not to be undermined. *See Credit Suisse*, 407 F.Supp.2d at 546–47 (citing cases). While the *Donalsdon* court, relying on *Greenwald*, initially held that the settlor should have an opportunity to prove he was not without fault before his claims were dismissed with prejudice, the court was still reluctant to enforce a "valid" indemnity clause to benefit a settling party because

> treating a settlor in the same manner as if it were found to be without fault ... would be violative of Federal policy as the settlement may well have occurred where, as a result of discovery, the facts clearly showed that the settlor had violated the securities regulations.

*Donaldson*, 148 Misc.2d at 884–85, 561 N.Y.S.2d 371. Indeed, Cross–Claimants overlook that on reargument, the *Donaldson* court refused to enforce the contractual indemnity provision, reaffirming the importance of federal securities policy and stating "the policy of encouraging the settlement of litigation ... must bow to the aforesaid federal securities law principles." *Donaldson II*, 150 Misc.2d at 128, 567 N.Y.S.2d 1002. The court further observed that securities cases where the underwriters settled after the issuer are "not likely to occur often in the future as the settlement of an underlying action will generally result in a resolution of all claims." *Id.*

## IV.  CONCLUSION

Cross–Defendants DYP and Guo's Motion to Dismiss for failure to state a claim is GRANTED as to Cross–Claimant Underwriters' remaining claim for contractual indemnification.

The Clerk of Court is directed to close this case.

SO ORDERED.